UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Case: 1:14-cr-00049 |
| : | Assigned To : Kollar-Kotelly, Colleen |
| : | Assign. Date : 3/10/2014 |
| : | Description: INFORMATION (A) |
| v. : | Case Related to: 12-cr-156 (CKK) |
| : | 18 U.S.C. § 371 |
| : | (Conspiracy) |
| JEFFREY E. THOMPSON, : | |
| : | D.C. Code § 22-1805a(a)(1) |
| Defendant. : | (Conspiracy) |

## INFORMATION

The United States Attorney charges that at all relevant times:

### DEFENDANT AND HIS RELATED COMPANIES

1.  Defendant JEFFREY E. THOMPSON ("THOMPSON"), a resident of the District of Columbia, was the Chairman, Chief Executive Officer, and majority owner of Thompson, Cobb, Bazilio and Associates, P.C. ("TCBA"), a for-profit corporation registered in the District of Columbia that provided accounting, management consulting, and tax services. TCBA billed and received millions of dollars under contracts with various District of Columbia and federal government entities. TCBA's main office was in the District of Columbia.

2.  THOMPSON was also the Chairman, Chief Executive Officer, President, and sole owner of D.C. Healthcare Systems, Inc. ("DCHSI"), an investment holding company and a for-profit corporation registered in the District of Columbia. DCHSI's address in the District of Columbia was the same as TCBA's address.

3.  DCHSI owned D.C. Chartered Health Plan, Inc. ("CHARTERED"). CHARTERED contracted with the District of Columbia government to provide managed care

1

services to a substantial number of District of Columbia residents. CHARTERED's contract with the District of Columbia, paid primarily by the federal government, totaled approximately $300 million each year. CHARTERED's main office was in the District of Columbia.

## COUNT ONE
### (Conspiracy – Federal)

4. The allegations set forth in paragraphs 1 through 3 of this Information are re-alleged and incorporated by reference herein.

5. The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Federal Election Campaign Act of 1971, as amended, codified at 2 U.S.C. §§ 431-455 (the "Election Act"). Similar to the D.C. Campaign Act, the Election Act limited financial influence in the election of candidates running for federal office and provided for public disclosure of the financing of federal election campaigns by limiting the amount and source of money that could be contributed to a federal candidate and that candidate's authorized committee; prohibiting any person from making conduit contributions; prohibiting direct contributions of corporate money to federal candidates, their authorized committees, and political action committees ("PACs"); and requiring authorized committees to file periodic reports of receipts and disbursements. These periodic reports, which were filed with the FEC and made publicly available, were intended to provide citizens with a transparent record of such contributions to candidates for federal office.

6. From at least in or about 2006 to in or about March 2012, in the District of Columbia and elsewhere, THOMPSON, together with others, unlawfully, willfully, and knowingly did conspire to commit offenses against the United States, that is, violations of Title 2, United States Code, Sections 437g(d)(1)(A)(i), 441a (excessive campaign contributions), 441b

(corporate contributions), and 441f (contributions in the name of another), and Title 26, United States Code, Section 7206(2).

## Objects of the Conspiracy

7. It was a part and object of the conspiracy that THOMPSON, together with others, knowingly and willfully made: (1) contributions in excess of the limits of the Election Act; (2) contributions of corporate money to candidates for federal office and a multicandidate PAC; and (3) contributions to candidates for federal office in the names of other persons, each aggregating $25,000 and more in a calendar year, in violation of Title 2, United States Code, Sections 437g(d)(1)(A)(i) and 441a(a)(1)(A), 441b(a), and 441f.

8. It was a further part and object of the conspiracy that THOMPSON, together with others, unlawfully, willfully, and knowingly would and did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with any matter arising under, the internal revenue laws, of a return and other document, which was materially fraudulent and false, in violation of Title 26 United States Code, Section 7206(2).

## Manner and Means of the Conspiracy

9. Among the manners and means by which THOMPSON, his co-conspirators, and others would and did carry out the objectives of the conspiracy were the following:

    a. They would and did disburse excessive and unreported corporate contributions from TCBA and DCHSI to pay for campaign services in coordination with and in support of a federal political candidate, including the distribution and dissemination of campaign-prepared materials in support of the federal political candidate's authorized committee.

  b. They would and did directly and indirectly cause individuals to make contributions to the authorized committees of candidates for the United States House of Representatives, Senate, and President, as well as multicandidate PAC, and would and did assure such individuals that they would be reimbursed for their contributions;

  c. They would and did reimburse those contributions using funds from THOMPSON, TCBA, and DCHSI;

  d. They would and did misrepresent such reimbursement payments in TCBA's accounting books and records by recording them variously as "advances," "bonuses," "advances on bonus," "AOBs," and consultant fees;

  e. They would and did prepare and assist in preparing, and cause to be prepared, false and fraudulent documents, and make and cause to be made false representations to the IRS, including but not limited to Forms W-2, Forms 1099, Forms 1120 U.S. Corporate Income Tax Return, Forms 1120X Amended U.S. Corporate Income Tax Return, promissory notes, and transactional documents.

### Overt Acts

10. In furtherance of the conspiracy and to effect the illegal objects thereof, THOMPSON and his co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Columbia and elsewhere:

  a. Between 2006 and 2012, THOMPSON utilized at least 32 conduits to make contributions to at least 13 federal candidates and a multicandidate PAC in excess of at least $250,000.

  b. During calendar year 2008, THOMPSON: (i) directly and indirectly caused individuals to make contributions to the authorized committees of candidates for the

United States House of Representatives and President, as well as a multicandidate PAC, aggregating $25,000 and more in that calendar year; (ii) assured such individuals that they would be reimbursed for their contributions; and (iii) reimbursed those contributions using funds from THOMPSON, TCBA, and DCHSI.

c. From in or about February 2008 through in or about May 2008, THOMPSON used TCBA and DCHSI to disburse approximately $608,750 in excessive and unreported corporate contributions to pay for campaign services in coordination with and in support of a federal political candidate for President of the United States and the federal political candidate's authorized committee.

d. THOMPSON caused TCBA to file false corporate income tax returns that misrepresented, concealed, and improperly deducted TCBA's conduit contribution reimbursement payments to certain TCBA employees in TCBA's Form 1120 U.S. Corporate Income Tax Returns for 2007 and 2008.

(Conspiracy, in violation of Title 18, United States Code, Section 371)

## COUNT TWO
(Conspiracy – District of Columbia)

11. The allegations set forth in paragraphs 1 through 3 of this Information are re-alleged and incorporated by reference herein.

12. The District of Columbia's Office of Campaign Finance ("OCF") was an agency and department of the District of Columbia with jurisdiction to enforce the limits and prohibitions of the District of Columbia Campaign Finance Reform and Conflict of Interest Act of 1974, as amended (then codified at D.C. Code §§ 1-1101.01 through 1-1151.06) (the "D.C. Campaign Act"). The D.C. Campaign Act regulated the role of money in the election of

candidates running for District of Columbia office and provided for public disclosure of the financing of District of Columbia election campaigns by imposing limits on the amount of money that could be contributed to a District of Columbia candidate and that candidate's principal campaign committee; prohibiting any person (including any corporation) from making a contribution in the name of another, including by reimbursement; and requiring principal campaign committees to file periodic reports of receipts and disbursements. These periodic reports, which were filed with the OCF and made publicly available, were intended to provide voters with a transparent record of such contributions to candidates for District of Columbia office.

13. From at least in or about September 2006 through in or about April 2011, in the District of Columbia and elsewhere, THOMPSON, together with others, unlawfully, willfully, and knowingly did conspire to defraud the District of Columbia and an agency thereof, that is, the Office of Campaign Finance ("OCF"), by reimbursing individuals for contributions and funding and concealing contributions in excess of those permitted under the District of Columbia Campaign Finance Reform and Conflict of Interest Act of 1974, as amended (then codified at D.C. Code §§ 1-1101.01 through 1-1151.06) (the "D.C. Campaign Act"), and thereby obstructed and impeded the due administration of the campaign finance laws.

### Objects of the Conspiracy

14. It was a part and object of the conspiracy that THOMPSON, together with others, unlawfully, willfully, and knowingly would and did defraud the District of Columbia and an agency thereof, that is, the OCF, by reimbursing individuals for contributions and funding and concealing contributions in excess of those permitted under the D.C. Campaign Act to candidates for Mayor of the District of Columbia and Member of the Council of the District of Columbia

("D.C. Council"), and thereby obstructed and impeded the due administration of the campaign finance laws.

## Manner and Means of the Conspiracy

15. Among the manners and means by which THOMPSON, his co-conspirators, and others would and did carry out the goal of the conspiracy were the following:

    a. They would and did make in-kind contributions to pay for campaign services and campaign materials in coordination with and in support of certain candidates for Mayor of the District of Columbia and Member of the D.C. Council and their principal campaign committees;

    b. They would and did disguise the true source of the in-kind contributions, that is, THOMPSON and his companies, by transferring the funds through intermediaries; and

    c. They would and did misrepresent and conceal from the OCF, other candidates, and the public that they had reimbursed individuals for contributions and disbursed in-kind contributions in coordination with and in support of certain candidates for Mayor of the District of Columbia and Member of the D.C. Council and their principal campaign committees by, among other things, causing principal campaign committees to submit materially false, fictitious, and fraudulent statements and representations to the OCF.

## Overt Acts

16. In furtherance of the conspiracy and to effect the illegal object thereof, THOMPSON, together with his co-conspirators, committed and caused to be committed the following overt acts, among others, in the District of Columbia and elsewhere:

    a. From in or about May 2010, until on or about September 14, 2010, THOMPSON used TCBA and DCHSI to disburse approximately $668,800 in excessive and

unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for Mayor of the District of Columbia and the political candidate's principal campaign committee.

b. From in or about August 2006, until in or about September 2006, THOMPSON used DCHSI to disburse approximately $278,000 in excessive and unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for Mayor of the District of Columbia and the political candidate's principal campaign committee.

c. From in or about April 2007, until in or about May 2007, THOMPSON disbursed approximately $20,000 in excessive and unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for Ward 4 Member of the D.C. Council and the political candidate's principal campaign committee.

d. From in or about September 2008, until in or about October 2008, THOMPSON disbursed approximately $100,000 in excessive and unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for At-Large Member of the D.C. Council and the political candidate's principal campaign committee.

e. From in or about October 2008, until in or about November 2008, THOMPSON disbursed approximately $100,000 in excessive and unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for At-Large Member of the D.C. Council and the political candidate's principal campaign committee.

    f. From in or about May 2010, until in or about September 2010, THOMPSON disbursed approximately $26,000 in excessive and unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for Ward 6 Member of the D.C. Council and the political candidate's principal campaign committee.

    g. From in or about April 2010, until in or about September 2010, THOMPSON disbursed approximately $140,000 in excessive and unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for Ward 1 Member of the D.C. Council and the political candidate's principal campaign committee.

    h. From in or about March 2011, until in or about May 2011, THOMPSON disbursed approximately $148,146 in excessive and unreported corporate contributions to pay for campaign services and campaign materials in coordination with and in support of a political candidate for At-Large Member of the D.C. Council and the political candidate's principal campaign committee.

      i.    From in or about September 2006, until in or about April 2011, THOMPSON utilized at least 75 conduits to make contributions to at least 15 mayoral and D.C. Council candidates in excess of at least $500,000.

**(Conspiracy, in violation of Title 22, D.C. Code, Section 1805a(a)(1))**

RONALD C. MACHEN JR.
United States Attorney
In and For the District of Columbia
D.C. Bar No. 447889

By: _____
Michael K. Atkinson, D.C. Bar No. 430517
Loyaan A. Egal, New York Bar
Lionel Andre, D.C. Bar No. 422534
Ellen Chubin Epstein, D.C. Bar No. 442861
Jonathan P. Hooks, D.C. Bar No. 468570
Ephraim (Fry) Wernick, D.C. Bar No. 497158
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530

DATED: March 10, 2014